**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**JOHN S. DEVNEW,**

    **Plaintiff,**

    v.                                                           Civil Action No. 2:05cv00400

**BROWN & BROWN, Inc.,**

    **Defendants.**

**OPINION AND ORDER**

Plaintiff John S. Devnew filed a civil action against his former employer Brown & Brown, Inc. alleging that the termination of his employment breached his employment agreement and violated the public policy of the Commonwealth of Virginia. Defendant filed a motion to dismiss contending that Plaintiff failed to state any claims upon which relief may be granted. For the reasons that follow, Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's claims are **DISMISSED**.

**I.    Factual and Procedural Background**[1]

Plaintiff John S. Devnew ("Devnew") is a licensed insurance agent in, and citizen of, the

---

[1] In ruling on a motion to dismiss, the court must accept the Plaintiff's allegations as true. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Therefore, the following summary is taken from allegations contained in Plaintiff's Motion for Judgment, which, for the purposes of a motion to dismiss, are taken as true. See infra II.A.1.

Commonwealth of Virginia. From July 1994 until on or around April 21, 2005, he was employed by Defendant Brown & Brown, Inc. ("B&B"). B&B is a Florida corporation that maintains its principal place of business in Daytona Beach. B&B provides insurance in multiple states, including Virginia, and is licensed to conduct business as an insurance agent in Virginia. B&B conducts its insurance business through a subsidiary in Norfolk, Virginia called the "Flagship Group." From on or about January 1, 2004 until his employment with B&B ceased in April 2005, Devnew served as Profit Center Manager of Flagship Group and Executive Vice President of B&B. Flagship Group is not a named party in this lawsuit.[2]

On December 27, 2000, Devnew, B&B, and Flagship Group entered into an Employment Agreement (the "Agreement"). The Agreement contains a termination provision categorizing Devnew as an at-will employee. The Addendum to the contract, entitled "Addendum #1 to the Employment Agreement" set forth Devnew's compensation and contained a separate provision stating that "[i]f the Company terminates Employee's employment during the term of this Agreement other than for 'Cause,' the Employee shall continue to receive the amount of $120,000, on an annualized basis, for the remainder of the term hereof." The term of the addendum was for two years from January 1, 2001 to December 31, 2002. Devnew continued in his employment with B&B after December 31, 2002 until he was terminated on April 21, 2005.

According to Devnew, B&B terminated him because "he had signed an insurance binder for an insurer with which [B&B] had no agency agreement and as to which he had no authority to

---

[2]Devnew alleges that B&B was his employer although the exhibits have some reference to the Flagship Group. The Agreement notes that as of November 21, 2000, the Flagship Group became a subsidiary of B&B.

make representations regarding coverage." Devnew claims, however, that his conduct with respect to this insurer accorded with company practice. He alleges that the proffered explanation was merely a pretext for firing him due to his attempts to shield himself, as well as B&B, from entering into an arrangement with an insurance premium financing company, namely Premium Assignment Corporation ("PAC"), that may have violated Virginia law. The alleged violation stemmed from B&B's relationship with PAC. Although PAC finances premiums in Virginia as well as other states, its Virginia business is subject to the provisions of Virginia Code §§ 38.2-4700 to 4712, which regulate companies that offer insurance premium financing in the Commonwealth. In January 2004, B&B allegedly entered into an agreement with PAC whereby B&B would receive "administrative reimbursement" from PAC based on the volume of insurance premium financing business it secured from B&B's referrals, some of which came from Virginia. According to Devnew, B&B agents were instructed "to refer clients to PAC for financing of their insurance premiums at financing rates imposed by PAC and not to negotiate on behalf of the clients for lower financing rates." Starting on January 1, 2004, the same time that Devnew became Profit Center Manager of Flagship Group and Executive Vice President of B&B, Devnew claims that B&B agents began referring clients to PAC in exchange for compensation under the guise of "administrative reimbursement."

The Code of Virginia prohibits insurance premium financing companies from providing valuable consideration to insurance agents as an inducement for steering clients to their service. The applicable provision, in pertinent part, reads as follows:

> No part of any charges shall be paid to any insurance agent by an insurance premium financing company, nor shall any insurance premium company pay, allow or give, or offer to pay, allow or give, directly or indirectly to any insurance agent, any valuable

> consideration as an inducement to finance the premium of any insurance policy. No insurance agent shall accept any valuable consideration as an inducement to finance the premium of any insurance policy.

Va. Code Ann. § 38.2-4705(C) (2005). Around December 2004, Devnew allegedly became suspicious that B&B's arrangement with PAC may have violated this provision of Virginia law and inquired about it with his supervisors. Devnew alleges that he wrote letters and made phone calls to supervisors raising his concerns. Around April 4, 2005, Devnew alleges that he spoke with B&B's Regional President, who allegedly warned Devnew to cease raising concerns or B&B's Chief Executive Officer, Chief Financial Officer, and General Counsel would get involved. According to Devnew's complaint, he was terminated less than three weeks later.

### A.     Procedural Background

Devnew filed a Motion for Judgment in the Circuit Court for the City of Norfolk on or around June 6, 2005. On July 1, 2005, B&B removed the case to this Court because the matter fell within the diversity jurisdiction of the federal courts. See 28 U.S.C. §§ 1332, 1441, 1446 (2000). B&B also filed a Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and, in the event that Motion failed, a Motion to Strike Jury Demand on the ground that Devnew waived his right to a jury trial in the Employment Agreement.

### B.     Causes of Action

Plaintiff's Motion for Judgment alleges three causes of action, two sounding in contract law and one sounding in tort. Devnew claims that his termination amounts to a breach of contract on two scores. First, although the Employment Agreement contains an at-will provision,

Devnew maintains that his termination violated the "Cause" provision contained in Addendum #1, which appears to have expired on December 21, 2002. He claims it survived during the entire term of his employment with B&B. Second, Devnew alleges that B&B breached an implied contract or covenant of good faith and fair dealing when it discharged him.

Devnew also claims that his termination constituted a tort of wrongful discharge. He maintains that B&B contravened Virginia public policy, as expressed in § 38.2-4705 of the Virginia Code, because he was discharged for the steps he took to expose the illegality of the "administrative reimbursement" arrangement between B&B and PAC.

Finally, Devnew further alleges that all of B&B's actions were malicious and in willful and wanton disregard of Devnew's rights under the Agreement and Virginia law, entitling him to punitive damages. He seeks compensatory damages of $7,500,000 and punitive damages of $350,000.

## II.   MOTION TO DISMISS

### A.   Legal Standard

#### 1.   Rule 12(b)(6) Motion

The Defendant's motion to dismiss claims that the Plaintiff fails to state a cause of action in either tort or contract. Rule 12(b)(6) of the Federal Rules of Civil Procedure permits federal courts to dismiss an action for "failure to state a claim upon which relief can be granted." "At this stage of the litigation, we must accept [the plaintiff's] allegations as true. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that

could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); accord Slade v. Hampton Rds. Reg'l Jail, 407 F.3d 243, 248 (4th Cir. 2005).

Because the purpose of a Rule 12(b)(6) motion is to test the legal, but not the factual sufficiency of a complaint, a court's consideration is limited to the pleadings alone, drawing all reasonable inferences in favor of the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). However, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). This exception is targeted at cases involving a dispute over the terms of, meaning of, or obligations imposed by a written instrument, such as a contract. See Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003); Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002); cf. Phillips v. LCI Intern., Inc., 190 F.3d 609, 618 (4th Cir. 1999) (holding that a district court did not err by considering a document outside the pleadings that "was integral to and explicitly relied on in the complaint"). Consequently, a court may consider any materials attached to the complaint on which the plaintiff's claim relies, a contract in particular.

### 2.     Applicable Law

In non-federal question cases before a federal court, such as this one, the court must apply the substantive law of the state in which the claim arose. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); accord United States v. Little, 52 F.3d 495, 498 (4th Cir. 1995) ("In adjudicating non-federal questions, a federal court must apply the law of the state."). In this case, it is undisputed that Virginia law applies, as the claims pled in the Motion for Judgment involve an employment relationship initiated, carried out, and terminated in Virginia. See Derthick v.

Bassett-Walker, Inc., 904 F. Supp. 510, 519-20 (W.D. Va. 1995) (Kiser, J.). When a federal court endeavors to interpret state law, it must do so in accordance with the precedent of the state's highest court, earnestly attempting to reach the same result that court would if presented with the issue. See Brunswick Corp. v. Long, 392 F.2d 337, 342 (4th Cir. 1968) (interpreting South Carolina law in accordance with the precedential trends of the South Carolina Supreme Court).

      B.      **Contract Claim**s

Devnew's Motion for Judgment contends that B&B breached the Employment Agreement by terminating him. First, he contends that the termination violates the "Cause" provision in paragraph 1 of Addendum #1 to the Employment Agreement. Second, he maintains that B&B breached an implied covenant of good faith and fair dealing. B&B counters that the Motion for Judgment fails to state a cause of action for breach of contract on either front.

      1.      **The "Cause" Provision in the Addendum**

As explained above in Part I.A, the Agreement contains an at-will employment provision stating that, "[e]mployee is an employee at will. Accordingly, the employment relationship memorialized by this Agreement may be terminated by Company or Employee at any time, with or without cause." (Employment Agreement at 2, ¶ 7.) Addendum #1 to the Employment Agreement, which sets for the terms of Devnew's compensation, contains a separate provision stating the following: "If the company terminates the Employee's employment during the term of this Agreement other than for "cause," the Employee shall continue to receive the amount of $120,000, on an annualized basis, for the remainder of the term hereof." (Id., Addendum to

7

Employment Agreement, ¶ 1(b).). The term set forth in the addendum expired December 31, 2002. Devnew contends that this claim should not be dismissed because there is a colorable question whether B&B's conduct amounts to a breach of contract under this latter provision. B&B argues that Addendum #1 to the Agreement does not override or modify the at-will provision. Rather, the addendum simply provides that, in the event B&B exercises its right to terminate Devnew without cause before December 31, 2002, Devnew will be paid $120,000 per annum until that date.

Devnew's Motion for Judgment does not allege that Addendum #1 was orally modified or extended or that a new addendum replaced it. He claims that because of the definitions set forth in the "cause" provisions of the addendum, that portion of the addendum still applied regardless of the period set forth in the addendum. It is clear from the text of the addendum that it did not survive past the stated term, which ended December 31, 2002.[3] As such, this portion of the contract claim is **DISMISSED**.

### 2. Implied Covenant of Good Faith and Fair Dealing

---

[3] It is worth noting that Paragraph 3 of the Employment Agreement provides that "[t]he term of the Agreement shall be continuous until terminated by either party, except that termination shall be subject to the provisions of Section 7, below." (Employment Agreement at 1, ¶ 3.) (Section 7, of course, is the at-will provision.) Presumably then, the parties agree that the terms of the Employment Agreement, other than the addendum, remained in effect throughout Devnew's employment with B&B. These include, for example, provisions regarding the scope of his duties, benefits, and his non-compete agreement. Indeed, neither party raises the possibility that the entire Employment Agreement became null and void on December 31, 2002. Even if there were some question about whether the Employment Agreement was in effect at all when Devnew was terminated, however, the default rule in Virginia is that an employee can be terminated without cause. "Virginia adheres to the common-law rule that when the intended duration of a contract for the rendition of services cannot be determined by fair inference from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at will, upon giving the other party reasonable notice." Miller v. SEVAMP, Inc., 234 Va. 462, 465, 362 S.E.2d 915, 916-17 (1987).

Next, Devnew argues that B&B breached an implied covenant of good faith and fair dealing by putting his insurance agent's licence in jeopardy due to the alleged illegality of the administrative reimbursement arrangement with PAC. Virginia law is decidedly straightforward on this matter: the Commonwealth does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in employment contracts, and in at-will employment contracts in particular. See, e.g., Baradell v. Bd. of Soc. Servs., 970 F. Supp. 489, 494 (W.D. Va. 1997); Derthick, 904 F. Supp. at 522; Mason v. Richmond Motor Co., 625 F. Supp. 883, 889 (E.D. Va. 1986) (Warriner, J.); Wright v. St. Charles Water Auth., 59 Va. Cir. 244, 2002 WL 31989105, *2 (July 11, 2002) (Quillen, J.); Schryer v. VBR, 25 Va. Cir. 464, 1991 WL 835295, *3 (Nov. 13, 1991) (Annunziata, J.);[4] cf. L & E Corp. v. Days Inn of Am., Inc., 992 F.2d 55, 59 n.2 (4th Cir. 1993) ("We also reject as a legitimate basis for its holding the district court's suggestion that a contractual agreement arose through an implied covenant of good faith and fair dealing. . . . The Virginia Supreme Court has yet to recognize such a covenant . . . .").

Nonetheless, Devnew contends that a duty of good faith and fair dealing should be implied from obligations imposed on him, such as the non-compete clause and the requirement

---

[4]In Schryer, the Fairfax Circuit Court concluded the following:

I find no authority in Virginia for implying a covenant of good faith and fair dealing to an at-will employment contract  Even assuming that Virginia law would imply a covenant of good faith and fair dealing in employment contracts, in light of the Virginia Supreme Court's adherence to the employment at-will doctrine and its narrowly defined public policy exception, I am of the opinion that such an implied covenant's application to employment contracts would be limited to contracts for a fixed term, or to those instances where clear public policy is violated by the discharge.

Schryer v. VBR, 25 Va. Cir. 464, 1991 WL 835295, *3 (Nov. 13, 1991) (internal citations omitted).

that he remain an insurance agent in good standing in the Commonwealth. Devnew cites a single case in support of his position, Charles E. Brauer Co. v. NationsBank of Va., NA, 251 Va. 28, 466 S.E.2d 382 (1996), which involves a commercial contract governed by the Uniform Commercial Code ("UCC"). The UCC implies a covenant of good faith and fair dealing into commercial contracts, 251 Va. at 33, 466 S.E.2d at 385 (citing U.C.C. § 8.1-203), and Devnew urges that it be extended to the employment context.

While the Court is sympathetic to Devnew's position, it is simply not empowered to broaden the scope of an implied covenant of good faith and fair dealing from the commercial context to the employment context. Indeed, when a question of state law presents an issue of first impression, or if a possible interpretation might have the result of creating new law, a federal court must err on the side of restraint. See Sellers v. Sch. Bd. of the City of Manassas, 960 F. Supp. 1006, 1012 (E.D. Va. 1997) (Ellis, J.) (holding that where "the Supreme Court of Virginia has never recognized such a cause of action[,] . . . it would be inappropriate for this Court to do so in the first instance"). The late Judge D. Dortch Warriner of this District cautioned federal district courts to be solicitous of state sovereignty when faced with the temptation to expand the interpretation of quintessentially state law: "[T]his Court is not only not the General Assembly of Virginia, the policy-making body of the Commonwealth, [it] is not even a common law court of the Commonwealth of Virginia. . . . [T]here is no excuse for a court arrogating to itself the authority to move the law along some purportedly wise or socially desirable path." Gravins v. Int'l Playtex, Inc., 586 F. Supp. 251, 251 (E.D. Va. 1984). Therefore, the Court declines to extend an implied covenant of good faith and fair dealing from the commercial to the employment context.

In response to Devnew's argument that the existence of the non-compete clause alters the application of the at-will employment doctrine, a non-compete clause has no effect on the ability of an employer to terminate an at-will employee with or without cause. As Devnew has not challenged the efficacy of the non-compete clause itself, nor requested a declaratory judgment respecting the non-compete agreement, the Court declines to pass judgment on its validity at this time. The enforceability of a covenant not to compete depends heavily on the facts of each case, see Richardson v. Paxton Co., 203 Va. 790, 794-95, 127 S.E.2d 113, 116-17 (1962), and such an inquiry is not now before the Court.

Accordingly, Devnew's breach of contract claim based on an implied covenant of good faith and fair dealing is **DISMISSED**.

    C.    **Tort Claim: Wrongful Discharge**

Devnew claims that B&B decided to terminate his employment because he refused to participate in the "administrative reimbursement" arrangement between B&B and PAC. He alleges that this termination contravenes public policy and so constitutes a wrongful discharge. Although the Court does not desire to condone the actions of the Defendant, the status of employment law in Virginia is well-settled. To overcome the instant Motion to Dismiss, Devnew must demonstrate that his claim fits squarely within one of the three narrow public policy exceptions that apply to at-will employees in Virginia. Despite Devnew's contention that his case falls within the ambit of all three, the public policy exception to the at-will employment doctrine does not reach so broadly.

The common law at-will employment doctrine permits either party to an at-will

employment relationship to terminate the relationship for any reason. See Stonega Coal & Coke Co. v. Louisville & Nashville R.R. Co., 106 Va. 223, 55 S.E. 551 (1906). Virginia recognizes at least one exception to the common law at-will employment doctrine: an employer may not discharge an employee for a reason that violates an established public policy of the Commonwealth. Bowman v. State Bank of Keysville, 229 Va. 534, 539-40, 331 S.E.2d 797, 800-01 (1985). These wrongful discharge claims, dubbed "Bowman claims" after the case that established them, are cognizable only under "unique facts." Id. at 539, 331 S.E.2d at 801. "While all statutes of the Commonwealth reflect public policy to some extent, since otherwise they presumably would not have been enacted by our General Assembly, termination of an employee in violation of the policy underlying any one of them does not automatically give rise to a common law cause of action for wrongful discharge." City of Virginia Beach v. Harris, 259 Va. 220, 232, 523 S.E.2d 239, 245 (2000).

The exception to the at-will employment doctrine established in Bowman is exceedingly narrow. In Rowan v. Tractor Supply Co., 263 Va. 209, 213, 559 S.E.2d 709, 711 (2002), the Supreme Court of Virginia specified three circumstances under which a common law action for wrongful discharge is cognizable in the courts of the Commonwealth. First, when a plaintiff shows that "an employer violated a policy enabling the exercise of an employee's statutorily created right." Id. at 213-14, 559 S.E.2d at 711. Second, when a plaintiff shows that "the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy." Id. at 214, 559 S.E.2d at 711. Third, and finally, when the plaintiff shows that "the discharge was based on the employee's refusal to engage in a criminal act." Id.

Each category is examined in turn.

### 1. Violation of a Statutorily Protected Right

Devnew argues that his discharge violates his right to conduct insurance business in the Commonwealth. This is so because forcing him to participate in the administrative reimbursement arrangement with PAC put his insurance agent license in jeopardy and consequently undermined his right to transact insurance business in the Commonwealth. He contends that he has a right to "transact the business of insurance" within Virginia so long as he maintains an insurance agent license. Va. Code Ann. § 38.2-1822. To transact insurance in Virginia, Devnew must obtain an insurance agent license pursuant to the requirements in § 38.2-1817. Finally, to maintain that license, he must comply with Virginia's insurance laws. § 38.2-1831(2).

This argument is a non-starter. There simply is no statutory right to transact insurance business or to hold an insurance agent license. The Virginia Code sets forth manifold prerequisites to both. See §§ 38.2-1800 to 1874. The quintessential example of an instance where the Virginia Supreme Court permitted a claim for wrongful discharge where the employer's conduct violated a statutorily protected right was in Bowman. In that case, however, the statute in question explicitly conferred "the right to one vote[] for each outstanding share of stock held . . . " on *all* shareholders. 229 Va. at 540, 331 S.E.2d at 801 (citing then Va. Code Ann. § 13.1-32). The statutes cited by Devnew are distinguishable from the shareholder's rights at issue in Bowman because they do not confer any right on all individuals holding an insurance license, nor do they portend to confer the right to either hold a license or conduct insurance

13

business on all citizens in the Commonwealth. Rather, the statutes cited by Devnew merely regulate the insurance industry. As there is no statutorily protected right to have an insurance license and conduct insurance business in Virginia, this ground must fail.

### 2. Violation of Public Policy

Devnew contends that his discharge violates the clauses contained within § 38.2-4705(c), which is set forth supra and prohibits a premium financing company from paying an insurance agent for steering a client to the finance company and prohibits the agent from accepting any such payment. The statute is designed to apply not only to Virginia companies but to payments made by out-of-state finance companies to an in-state insurance agent. To succeed on this ground, Devnew must demonstrate that § 38.2-4705(C) is one of two types of statutes. The first "is a statute stating explicitly that it expresses a public policy of the Commonwealth." Anderson v. ITT Indus. Corp., 92 F. Supp.2d 516, 520-21 (E.D. Va. 2000) (Ellis, J.) (citing Lockhart v. Commonwealth Educ. Sys. Corp., 249 Va. 98, 439 S.E.2d 328, 331 (1994)). Section 38.2-4705(C) contains no such statement, and Devnew does not contend otherwise. The second, and hence the only way that Devnew can succeed on this ground, is by showing that § 38.2-4705(C) is "designed to protect the property rights, personal freedoms, health, safety or welfare of the people in general." Harris, 259 Va. at 232, 523 S.E.2d at 245 (internal quotation marks omitted). It goes without saying that § 38.2-4705(C) is generally intended to protect and promote the welfare of the citizens of the Commonwealth. Showing this, however, is not sufficient in and of itself.

Section 38.2-4705(C) "may not serve as the basis of a Bowman claim, unless [Devnew]

14

also shows that he . . . is a member of the class of individuals the public policy is intended to benefit." Anderson v. ITT Indus. Corp., 92 F. Supp. 2d at 521 (citing Mitchem v. Counts, 259 Va. 179, 523 S.E. 2d 246, 251 (2000); Dray v. New Mkt. Poultry Prods., Inc., 258 Va. 187, 518 S.E.2d 312, 313 (1999)).  On its face, § 38.2-4705(C) is clearly protecting insurance consumers and payors of insurance premiums or finance charges, not insurance agents who would have received the money.  Thus, the obvious purpose of the statute is to ensure that insurance consumers are afforded an opportunity to obtain the most advantageous insurance premium financing rates.  In fact, the statute does not protect insurance agents at all.

That said, "this point is not dispositive[,] as a statute's protective reach may extend beyond the class of persons who are victims of its violation . . . to those who have a legal duty under that statute." Anderson, 92 F. Supp. 2d at 521 (citing Dray, 258 Va. 187, 518 S.E.2d 312).  Devnew contends that § 38.2-4705 imposes an affirmative duty on all insurance agents.  Unfortunately, that is not the case.  Rather, § 38.2-4705 *prohibits* participating in insurance premium financing kickback schemes.  Statutes that prohibit conduct are distinct from statutes that impose an affirmative duty on an individual. See Dray, 215 Va. at 191, 518 S.E.2d at 314.  To hold otherwise would essentially create generalized whistleblower protection for retaliatory discharges within the class of "narrow" exceptions to the at-will employment doctrine, which the Virginia Supreme Court has already rejected. See Anderson, 92 F. Supp. 2d at 521 n.14 ("More broadly, Dray stands for the proposition that the public policy exception does not encompass a generalized, 'whistleblower' retaliatory discharge claim, thereby evincing the Supreme Court of Virginia's intent to limit the expansion of the Bowman exception.").  To the extent that the Plaintiff is attempting to enforce the law through a private action, the Commonwealth of Virginia

15

has simply not authorized him to do so. Thus, this portion of the Plaintiff's suit must fail.

### 3. Compelling Criminal Activity

Devnew claims that he has been wrongfully discharged as an at-will employee because he refused to participate in activities prohibited by statute. Devnew maintains that the civil penalties imposed on insurance agents who commit violations of Va. Code Ann. §§ 38.219, 220, and 221 are tantamount to criminal fines. While he concedes that Virginia law does not impose criminal liability on insurance agents who violate insurance laws and regulations, much less § 38.2-4705 in particular, he argues that § 38.2-220, which permits the Insurance Commission "to issue temporary and permanent injunctions restraining acts which violate or attempt to violate provisions of this title and to enforce the injunctions by civil penalty or *imprisonment*," signals the criminality of violating the insurance laws by virtue of the possibility that an injunction can be enforced by imprisonment. (Emphasis added). The violation of an injunction is civil, not criminal, and is not imposed by statute but by the power of the court.

Devnew contends that any violation of *any* insurance law or regulation is tantamount to criminal conduct, and gives rise to a claim for wrongful discharge. That is a result the Supreme Court of Virginia has not countenanced. To the contrary, it has made it clear that wrongful discharge claims represent only a narrow exception to the at-will employment doctrine. Furthermore, as B&B correctly points out, § 38.2-220 does not empower the Insurance Commission to imprison an insurance agent who violates an insurance law or regulation, but rather clarifies that, upon violation of a court-issued injunction, the violator of an injunction may be imprisoned. In other words, the statutory language in § 38.2-220 merely echoes a well-known

proposition: courts of equity may enforce its injunctions through any means, including by, in extreme instances, imprisonment.

This case is distinct from the only instance where the Virginia Supreme Court has recognized a claim for wrongful discharge on the ground that the employer's conduct compelled an employee to engage in criminal conduct. The Virginia Supreme Court stated that the at-will employment doctrine must not "serve as a shield for employers who seek to force their employees, under the threat of discharge, to engage in criminal activity." Mitchem, 259 Va. at 190, 523 S.E.2d at 252. Mitchem involved a Virginia law prohibiting fornication and lewd and lascivious cohabitation. See 259 Va. at 189-90, 523 S.E.2d at 252. "Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." Dorsey v. Commonwealth, 32 Va. App. 154, 161, 526 S.E.2d 787, 791 (2000). Both of the statutes at issue in Mitchem are codified within Title 18 of the Virginia Code, which contains "crimes and offenses generally." 259 Va. at 189-90, 523 S.E.2d at 252. By contrast, § 38.2-4705(C) is codified amongst the insurance laws and, particularly, laws regulating insurance premium financing and carries only civil sanctions.

The inquiry does not end there. "Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect, as to transform what was clearly intended as a civil remedy into a criminal penalty." Dorsey, 32 Va. App. at 161, 526 S.E.2d at 791 (citing Hudson v. United States, 522 U.S. 93, 99 (1997)).[5] The penalties for violating the insurance regulations

---

[5]The Court in Hudson outlined the following "useful guideposts" in determining whether a punishment is criminal:

include a maximum fine of $5,000 per infraction or a maximum fine of $10,000 for a series of similar infractions, restitution, and possible licensing sanctions. See id. In consideration of the maximum amounts, it is clear that the fines are in no way "so punitive" as to transform them from civil to criminal penalties. Cf. United States v. Halper, 490 U.S. 435, 439 (1989) (holding that fine of $130,000 was criminal as it bore no rational relation to government's total loss of $585 plus investigation and prosecution costs). Accordingly, although participating in an insurance premium financing kickback scheme does violate Virginia law, it is not the type of conduct that would give rise to a cause of action for wrongful discharge. It does not constitute a crime. Unethical or unpermitted activity is not criminal unless there is a criminal punishment set forth addressing such activity. See United States v. Ward, 448 U.S. 242, 248 (1980) (overruling lower court's finding that pollution of waterway was a criminal act because Congress clearly manifested its intent that penalties were civil in nature).

In the legal profession, for example, ethical obligations are enforced through civil proceedings. See, e.g., Maddy v. First Dist. Comm. of the Va. State Bar, 205 Va. 652, 654, 139 S.E.2d 56, 58 (1965). "A proceeding of this kind is merely civil in nature and not criminal.

---

(1) [w]hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

Hudson, 522 U.S. at 99-100 (internal quotations omitted). As the Court emphasized, however, "these factors must be considered in relation to the statute on its face, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id. at 100 (internal quotations and citations omitted).

Hence it is not necessary to prove appellant's guilt beyond a reasonable doubt in order to justify the court's action." <u>Tucker v. Seventh Dist. Comm. of Va. State Bar</u>, 202 Va. 840, 846, 120 S.E.2d 366, 371 (1961). Penalties for lawyers are similar to those for insurance agents: the possibility of fines, restitution, and revocation or suspension of licenses. Indeed, if all unethical or unpermitted acts were criminal, many lawyers would not escape the reach of the Department of Corrections. Just as in the regulation of lawyers, the laws regulating insurance agents provide penalties that are solely civil in nature. An injunction issued by a court prohibiting certain conduct does not necessarily make that conduct criminal as it may relate to contractual or ethical obligations. Devnew simply cannot rely on the possibility of imprisonment resulting from a potential injunction to convert the insurance regulations into criminal statutes.

Further counseling against this claim is the fact that Devnew was an officer of the defendant company, B&B, which conducts business in several states. Some of those states may or may not have regulations which bar the sharing of fees between insurance agents and premium financing companies. Indeed some of the insurance premiums written and financed in those states may have resulted from the work of Devnew or those employees who were responsible to him. What Devnew is asking this Court to do, however, is to extend a narrow exception to the well-established at-will employment doctrine in such a way as to encompass not just criminal acts, but any violation of any administrative regulation. To stretch the doctrine so far as Devnew's claim may suggest would mean that employees would have causes of action for refusing to violate *any* federal or state regulation. The effect of such a rule would, in an era when the regulatory state of the civil law touches upon almost all aspects of society, serve only to increase litigation and render the at-will employment doctrine an empty policy.

### IV. CONCLUSION AND ORDER

If the legislature wanted to make the acts criminal it could do so. The prohibited practice is clearly unethical and morally reprehensible. The at-will employment doctrine, which is so strong in Virginia, would be placed in jeopardy by extending a right of action for wrongful discharge to employee who refuse to violate a state or federal regulation.

As this Court has noted, the non-compete clause is not contested in this suit and this Court would have a problem enforcing such a clause where a discharge was predicated on the refusal of an employee to commit or participate in the commission of an unlawful act. In Virginia under the clean hands doctrine, such action by an employer might prevent the enforcement of the non-compete clause. Although the Court can admire Devnew's ethics and morals, the law is one thing, and, unfortunately, ethics and morals are another.

For the foregoing reasons, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED**. Plaintiff's Complaint, including all of the claims contained therein, is accordingly **DISMISSED**.

The Clerk of the Court is **DIRECTED** to close this case and to provide a copy of this Opinion and Order to the Plaintiff and counsel for the Defendant.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

October 17, 2005